COMMONWEALTH *vs*. TERENCE M. RILEY.

Norfolk. May 14, 1986. — September 22, 1986.

Present: KASS, SMITH, & WARNER, JJ.

*Practice, Criminal,* Duplicitous convictions, Instructions to jury, Sentence. *Evidence,* Hospital record. *Constitutional Law,* Confrontation of witnesses. *Motor Vehicle,* Operating under the influence, Operating to endanger.

At the trial of complaints charging numerous motor vehicle offenses, including vehicular homicide while operating under the influence of intoxicating liquor, there was no error in the admission in evidence of a hospital record containing the results of an alcohol test of the defendant's blood ordered by a physician to assist him in determining whether certain of the defendant's symptoms were caused by a head injury or by inebriation; nor did admission of the hospital record violate the defendant's constitutional right to confront the witnesses against him. [699-702]

No substantial risk of a miscarriage of justice requiring reversal of a defendant's conviction of vehicular homicide while operating under the influence of intoxicating liquor was created by the judge's erroneous instruction to the jury respecting the meaning of operating under the influence, where there was substantial evidence at trial of the defendant's intoxication, and where the jury's verdict of guilty of operating to endanger made clear that the jury believed the defendant's ability to drive had been affected by his intoxication. [702-703]

On appeal from a conviction of vehicular homicide while operating under the influence of intoxicating liquor after a trial in which convictions of other motor vehicle offenses had been placed on file and, thus, were not before this court, the court nevertheless set aside a verdict of guilty on a complaint charging the defendant with vehicular homicide while operating to endanger, where the defendant had been convicted on two charges of homicide when the record made clear that one person had died in the accident in question. [703]

COMPLAINTS received and sworn to in the Wrentham Division of the District Court Department on December 27, 1983.

On transfer to the jury session of the Dedham Division, the cases were tried before *Joseph D. Clancy*, J.

*Robert F. Muse (Ronald Kovner* with him) for the defendant.

*Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted by a jury of six in the District Court of Northern Norfolk on several complaints. The complaints charged the defendant with (1) vehicular homicide while operating a motor vehicle under the influence of intoxicating liquor, (2) vehicular homicide while operating a motor vehicle so as to endanger the lives and safety of the public, (3) operating a motor vehicle while under the influence of intoxicating liquor, (4) operating a motor vehicle so as to endanger the lives and safety of the public, and (5) failure to keep to the right. All the charges arose from a motor vehicle accident that occurred on Route 1A in Walpole. One person died as a result of injuries sustained in the accident. On appeal, the defendant claims that the judge erred in denying his motion to exclude from evidence blood alcohol test results contained in his hospital record, and in his instructions to the jury on the definition of "while under the influence." He also contends that the "lesser charges" which were placed on file must be dismissed as duplicitous on the authority of *Commonwealth* v. *Jones,* 382 Mass. 387, 395-397 (1981).

Because of the nature of the claims raised by the defendant, it is not necessary for us to give a detailed recitation of the facts that could have been found by the jury. We discuss only those facts that bear directly on each issue.

1. *Admission of the hospital record.* The Commonwealth was allowed to place in evidence, over the defendant's objection, his hospital record which contained the results of an alcohol test of his blood taken shortly after the accident. The record contained the notation that the test produced a reading of 229 mg. per deciliter.[1] Before allowing the hospital record in evidence, the judge held a voir dire to determine its admis-

---

[1] There was testimony from a doctor that the equivalent percentage of alcohol would be approximately .22 percent. By statute, if the percentage of alcohol in a defendant's blood is .10 percent or more, there is a presumption that such defendant was under the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (*e*).

sibility. There was evidence of the following. After the accident the defendant was taken by ambulance to a nearby hospital, where he was examined by a Dr. Jorgenson. The doctor asked the defendant what had happened, and the defendant responded that he had been drinking and then asked, "Did I hurt anyone?" The doctor proceeded to conduct a neurological examination. He noticed that some of the defendant's responses were "very sluggish," which indicated that the defendant either was suffering from head injury or was inebriated. In order properly to evaluate the cause of the defendant's condition before commencing treatment, the doctor ordered X-rays and a blood test. The result of the blood test noted above was placed in the defendant's hospital record. At the close of the evidence, the judge ruled that the blood test result contained in the hospital record would be admissible because it had been ordered for medical reasons. The defendant contends that the admission of the hospital record was error because it did not meet the requirements of G. L. c. 233, § 79. He also argues that its admission violated the defendant's rights of confrontation and to a fair trial.

Under G. L. c. 233, § 79, as amended through St. 1974, c. 225, "[r]ecords kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability." The statute "in effect provides an exception to the hearsay rule which allows hospital records to be admitted to prove the truth of the facts contained therein, in so far as those facts relate to treatment and medical history." *Bouchie* v. *Murray,* 376 Mass. 524, 527 (1978).

The record of the blood test result in the instant case met the admissibility criteria outlined in the statute. See *Bouchie* v. *Murray, supra* at 531. The hospital record itself had been kept under G. L. c. 111, § 70. The examining physician deemed the test necessary in order to assist him in determining the defendant's medical condition for purposes of treating him. It follows that the information as to the blood test result was

"germane to the patient's treatment or medical history." *Bouchie* v. *Murray, supra* at 531. "[E]ven though incidentally the facts recorded may have some bearing on the question of liability," the hospital record is still admissible. *Commonwealth* v. *Gogan,* 389 Mass. 255, 263 (1983) (hospital record containing notations that the defendant had been intoxicated and violent on his admission to the hospital was admissible at the trial of complaints charging assault and battery on a police officer and disturbing the peace). *Commonwealth* v. *Atencio,* 12 Mass. App. Ct. 747, 751 (1981) (no error in prosecutor's reference, in closing argument in trial for operating a motor vehicle while under the influence of liquor, to hospital record which noted that there was a "strong odor of alcohol" about the defendant). The hospital record also shows that the test result was recorded from "the personal knowledge of the entrant or from a compilation of the personal knowledge of those who are under a medical obligation to transmit such information." *Bouchie* v. *Murray, supra* at 531. The fact that the examining physician did not have any personal knowledge of the test goes to the weight of the evidence and not its admissibility. *Commonwealth* v. *Franks,* 359 Mass. 577, 580 (1971).[2]

The defendant also claims that the admission in evidence of the test result violated his right of confrontation under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. However, his arguments in support of this contention consist entirely of an attack on the test's reliability, not on the denial of his right of confrontation. Such arguments go to the weight of the evidence, not its admissibility. At no time does the defendant cite any ruling of the trial judge (nor can we find any in the record) that prevented him from cross-examining any witness or from calling any witness to testify in regard to the test. Furthermore, "[i]t is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be intro-

---

[2] The defendant also argues that the admission of the blood test result was error because there was no testimony that the test was performed on the hospital premises. There is nothing in G. L. c. 233, § 79, that requires that such tests be performed on the premises of the hospital.

duced." *Commonwealth* v. *Franks, supra* at 580, quoting from *Dutton* v. *Evans,* 400 U.S. 74, 80 (1970). "A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability." *Chambers* v. *Mississippi,* 410 U.S. 284, 298-299 (1973). Hospital records, by their nature, are presumed to be reliable. *Bouchie* v. *Murray, supra* at 529. "The conceptual underpinning of permitting the [hospital] records in is the fact that there is a presumption of reliability, namely, that medical people will go about their business in good faith, without any propensity to embellish facts because of anticipated litigation, concerned instead with eliciting information from direct sources designed to diagnose and treat patients." Greaney, Evidence — Hospital Records Exception to the Hearsay Rule — Medical History and Treatment — Second Level Hearsay, 64 Mass. L. Rev. 33, 34 (1979). We see no violation of the defendant's right of confrontation under the circumstances presented here.

Finally, the blood alcohol test result was not the only evidence on the question whether the defendant was operating a motor vehicle while under the influence of intoxicating liquor. The examining physician testified that he was of opinion that the defendant was under the influence of liquor at the time he examined him shortly after the accident. He stated that his opinion was not based on the blood test result but solely on the basis of the odor of alcohol coming from the defendant, coupled with his irregular behavior in the emergency room. Two police officers also testified that they noticed an odor of alcohol about the defendant shortly after the accident.

2. *The judge's charge to the jury on the operating under the influence charge.* The defendant claims that the judge's instruction to the jury on the definition of operating a motor vehicle while under the influence of intoxicating liquor was error. The instruction was in conformity with Instruction 5.10 of the Model Jury Instructions for Criminal Offenses Tried in the District Court Department (1980) and was not objected to by the defendant.[3] After the charge in this case was given, the

---

[3] In his brief the defendant asserts that he had taken an objection to that portion of the judge's charge concerning the definition of operating under

court in *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), ruled that an instruction using substantially the same language as the judge employed in this case was error. The court held that "in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely" (emphasis in original). *Ibid.*

After its decision in *Connolly,* the court again decided a case concerning language similar to the instruction in this case and in *Connolly.* In *Commonwealth* v. *Bryer,* 398 Mass. 9, 16-17 (1986), the court held that, although the instruction was erroneous, reversal on that ground was not warranted in the circumstances of that case. The facts in this case are virtually identical to those in *Bryer.* In both cases there was substantial evidence of intoxication. Also, the defendant here was convicted, as was the defendant in *Bryer,* of operating to endanger in addition to operating under the influence. As in *Bryer,* "[t]he risk in this case, that the jury believed that the defendant's state of intoxication had no effect on his ability to drive when they specifically found that he was driving negligently, is not substantial." *Id.* at 17. On the basis of *Bryer,* we hold that "reversal on the ground of [the] erroneous charge is not warranted." *Ibid.*

3. *Charges placed on file.* With the exception of the charge of vehicular homicide while operating a motor vehicle under the influence of intoxicating liquor, the charges against the defendant were placed on file. These charges were placed on file without apparent objection of the defendant (and the defendant does not argue otherwise). See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 370 n.1 (1978); *Commonwealth* v. *Gallison,* 383 Mass. 659, 660 n.2 (1981); *Commonwealth* v. *DePina,*

---

the influence of intoxicating liquor. However, no such objection appears in the record.

10 Mass. App. Ct. 929, 930 n.1 (1980). "Absent exceptional circumstances, we do not consider appeals on assignment of error on [complaints] placed on file since no appeal may come before us until after judgment, which in criminal cases is the sentence." *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975). Accordingly, we do not consider the defendant's contentions that the convictions of operating under the influence of liquor, operating to endanger, and failing to keep to the right should be set aside on the ground that they are duplicitous. We are troubled, however, by the fact that the defendant stands convicted on two counts of homicide when it is clear from the record that one person died as a result of the accident. In this "exceptional circumstance [ ]" we feel that the verdict convicting the defendant of vehicular homicide while operating a motor vehicle so as to endanger should be set aside and the corresponding complaint dismissed. See *Commonwealth* v. *Chappee,* 397 Mass. 508, 523-524 (1986).

> *Judgment on complaint charging homicide while operating a motor vehicle under the influence of intoxicating liquor affirmed.*

> *Verdict on complaint charging homicide while operating a motor vehicle so as to endanger is set aside and the complaint is to be dismissed.*